**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-13578

Non-Argument Calendar

————————————

LILLIE M. MIDDLEBROOKS,

*Plaintiff-Appellant,*

*versus*

BOND, JAMES BOND, INC.,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:25-cv-00166-WMR

————————————

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Lillie Middlebrooks, proceeding pro se, appeals the district court's order dismissing her complaint for failure to state a claim

and declining to exercise supplemental jurisdiction over her Georgia state law claim. After careful review, we affirm the district court's order.

## I.

In 2022, Floyd County law enforcement arrested Middlebrooks for criminal trespass and obstruction. Bond, James Bond, Inc., a bonding company, posted a bond to secure her release. In 2024, after she failed to appear for a scheduling hearing, a Floyd County judge issued a bench warrant for her arrest. BJB was notified of the warrant, and, according to Middlebrooks's complaint, they "sent two white, racist, Jim [C]row, KKK bounty hunters" to seize her. Doc. 1 ¶ 10.

When BJB's bail recovery agents arrived at Middlebrooks's home, they verified her identity, arrested her, and searched both her and her sister for weapons. During the process, Middlebrooks's sister sustained injuries, and the bail recovery agents contacted the local sheriff's office to dispatch EMS to transport Middlebrooks's sister to the hospital. The bail recovery agents then returned Middlebrooks to the Floyd County jail, where county law enforcement officials took her into custody. Middlebrooks spent five hours in the Floyd County jail before posting another bond for her release.

Middlebrooks sued BJB, alleging two violations of the Fourth Amendment under 42 U.S.C. § 1983, along with one violation of Georgia's false imprisonment statute.

BJB filed a motion to dismiss. The district court dismissed Middlebrooks's federal claims on the basis that BJB was not a state actor and could therefore not be liable for a Fourth Amendment violation under section 1983. And the district court declined to exercise supplemental jurisdiction over Middlebrooks's remaining state law claim. Middlebrooks timely appealed.

## II.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).

We review a district court's decision to decline to exercise supplemental jurisdiction over state claims for abuse of discretion. *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015).

## III.

Middlebrooks raises two claims on appeal. First, she challenges the district court's dismissal of her section 1983 claims on the basis that the BJB bail recovery agents were not state actors. Second, she contends that the district court erred by declining to exercise supplemental jurisdiction over her state law claim. We reject both arguments.

*A.*

First, Middlebrooks argues that the district court's dismissal of her section 1983 claims was improper because the BJB agents were state actors. But because the BJB agents were not, in fact, state actors, Middlebrooks's section 1983 claim fails as a matter of law.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant deprived them of a right secured by the Constitution or federal law and (2) that deprivation occurred under color of state law. *Andre v. Clayton County*, 148 F.4th 1282, 1291 (11th Cir. 2025). The requirement that the deprivation be "under color of state law" means that the action must have been committed by a state actor. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982).

Only in rare cases can a private actor be considered a state actor for purposes of section 1983. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Our caselaw "recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test." *Id.* The public function test limits state action to instances when private actors perform functions traditionally the exclusive prerogative of the state. *Willis v. Univ. Health Servs.*, 993 F.2d 837, 840 (11th Cir. 1993). The state compulsion test limits state action to instances in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution. *Id.* And the nexus/joint action test applies

where the state has so far insinuated itself into a position of inter-dependence with the private party that it was a joint participant in the enterprise. *Id.*

On *de novo* review, we conclude that the BJB agents were not state actors under any of the three tests.

First, applying the public function test, the BJB agents were not state actors because a bail bondsman's seizure of a principal is not a function that is traditionally reserved to the exclusive prerogative of the state. *See Willis*, 993 F.2d at 840. Instead, the right of a bail bondsman to seize a principal arises from a private right of contract instead of criminal legal procedure. This conclusion is supported by both federal and state court decisions, which have concluded that bail bonding, when conducted without the assistance of law enforcement, as here, is an exclusively private undertaking. *See, e.g., Fitzpatrick v. Williams*, 46 F.2d 40, 40 (5th Cir. 1931); *Harper v. State*, 790 S.E.2d 552, 555 n.1 (Ga. Ct. App. 2016), *rev'd on other grounds*, 810 S.E.2d 484 (Ga. 2018).

Second, the BJB agents were not state actors under the state compulsion test. The order issued by the Floyd County judge stated that Middlebrooks was to be "re-arrested by any Sheriff, Deputy Sheriff, or other lawful arresting officer of Georgia." Doc. 1 at 36. The order did not include "significant encouragement, either overt or covert," for BJB to dispatch its bail recovery agents to arrest Middlebrooks. *Langston v. ACT*, 890 F.2d 380, 385 (11th Cir. 1989). BJB's decision to retrieve Middlebrooks was BJB's alone;

there is no support for the conclusion that the BJB agents acted under any state compulsion.

Third, applying the nexus/joint action test, the BJB agents were not state actors because they did not receive "any instructions, direction, aid, comfort, succor, or anything else" from the state in effectuating her arrest. *Jaffe v. Smith*, 825 F.2d 304, 308 (11th Cir. 1987). Although Middlebrooks does allege that the BJB agents contacted law enforcement, they did so in order to summon EMS to care for her sister—not to exercise any authority under the re-arrest order. The state was not "a joint participant in the enterprise" of Middlebrooks's arrest. *Willis*, 993 F.2d at 840 (citation modified). Accordingly, we cannot say that the BJB agents' action qualifies as state action under the nexus/joint action test.

Because the BJB agents' actions do not satisfy any of our state action tests, we conclude that Middlebrooks has failed to allege the necessary state action to sustain her section 1983 claim. *See Andre*, 148 F.4th at 1291.

### B.

Second, Middlebrooks contends that the district court abused its discretion by declining to exercise supplemental jurisdiction over her state law claim. We disagree.

A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court has "supplemental jurisdiction over all other claims that are so related to claims" over

which it has "original jurisdiction that they form part of the same case or controversy," but it may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(a), (c)(1). We have routinely "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). "A district court, exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022).

Here, because the district court dismissed all federal claims over which it had original jurisdiction, we conclude that it did not abuse its discretion by declining to exercise supplemental authority over the remaining state claim. *See Raney*, 370 F.3d at 1089.

**IV.**

**AFFIRMED.**